DISTRICT COURT OF GUAM

TERRITORY OF GUAM

| | |
|---|---|
| LUCIA PAMPLONA, individually and as the Administrator of the ESTATE OF VINCENT PAMPLONA, ESTATE OF VINCENT PAMPLONA, J.V.P., a minor, by and through his Guardian ad Litem, Richard Pamplona, JOSE PAMPLONA, and ANGELITA PAMPLONA,<br><br>                  Plaintiffs,<br>   vs.<br><br>BRYAN PINE, individually and dba PINE RENTAL SERVICE, MARCUS GUERRERO, and PACIFIC INDEMNITY INSURANCE COMPANY,<br><br>                  Defendants. | CIVIL CASE NO. 09-00003<br><br><br>**ORDER & OPINION RE:**<br>**[1] PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT;**<br>**[2] DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; AND**<br>**[3] DEFENDANTS' MOTION TO STRIKE THE DECLARATION OF SCOTT TENGAN** |
| NOIDA HERNANDEZ, R.O.H., a minor, and R.E.H., a minor, by and through their Guardian ad Litem, Raymunda Chilcutt, individually and as successors in interest to decedent Romeo J. Hernandez,<br><br>                  Plaintiffs,<br>   vs.<br><br>BRYAN PINE, individually and dba PINE RENTAL SERVICE, MARCUS GUERRERO, and PACIFIC INDEMNITY INSURANCE COMPANY,<br><br>                  Defendants. | *as consolidated with*<br><br>CIVIL CASE NO. 09-00006<br>CIVIL CASE NO. 09-00007<br>CIVIL CASE NO. 09-00008 |

Before the court are Plaintiffs' Motion for Partial Summary Judgment, Defendants' Motion for Summary Judgment, and Defendants' Motion to Strike. *See* ECF Nos. 127, 142, 153.[1] On March 20, 2014, the parties appeared before the court for a hearing on the above motions and rested on the briefs. After reviewing the parties' briefs, relevant cases and statutes, and having heard argument from counsel on the matter, the court hereby **GRANTS** Defendants' Motion for Summary Judgment, and finds **MOOT** Plaintiffs' Motion for Partial Summary Judgment and Defendants' Motion to Strike for the reasons stated herein.

## I. CASE OVERVIEW

This action arises out of a workplace accident which occurred on August 31, 2006 at the Guam Shipyard in Santa Rita, Guam, which resulted in the death of two members of the crew of the *USNS San Jose*—Vincent Pamplona and Romeo Hernandez (collectively "Decedents").

### A. Factual Background

On August 25, 2006, the *USNS San Jose* ("*San Jose*") entered into a contract with Pine Rental Service ("Pine Rental") to rent a manlift,[2] which was manufactured by JLG Industries, Inc. ("JLG"). *See* Travis Decl. Ex. A, ECF No. 142-2. Prior to delivering the manlift to the *San Jose*, Pine Rental employee Marcus Guerrero ("Defendant Guerrero") inspected the manlift for two to three hours to ensure that it was properly functioning. At the time of the delivery on August 25, 2006, Defendant Guerrero went through the inspection checklist with the *San Jose* operators, and confirmed that all criteria, including all functions and controls, the boom assembly, and the presence of manuals and safety decals, were satisfied. *See id*. Ex. B, at 33–39; *id*. Ex. M, ECF No. 142-5.

---

[1] All ECF numbers referred to herein correspond to Civil Case No. 09-00003 unless otherwise noted.
[2] A manlift, a type of aerial device, is a self-propelled vehicle with a long arm consisting of a riser and boom extension. At the end of the boom is a work platform that is enclosed by a railing and designed to hold two workers. The manlift is designed to be operated from the work platform (i.e., allowing the operator to move the manlift and to raise and lower the work platform), but there are also controls available at the ground level.

1         During the week that the manlift was being used before the accident occurred, Defendant Guerrero was called out twice to service the manlift. During the first service call, he found the manlift at a different pier because the *San Jose* had loaned it out to a third party. Defendant Guerrero fixed a small hydraulic leak in the steer or drive hose. Thereafter, he was called out again to service the manlift once it had been returned to the *San Jose* because they believed there was another leak. After inspection, Defendant Guerrero determined that it was residual fluid from the previous leak. *See* Moroni Decl. Ex. A, at 123–28, ECF No. 148-1.

        At the time of the accident, Decedents were on the work platform of the manlift performing maintenance work on the side of the *San Jose*.[3] *See* Travis Decl. Ex. F, at 23–25, ECF No. 142-3. The manlift partially tipped over, which left the boom extended almost vertically and the work platform was approximately thirty feet above the ground. Decedents fell from the work platform and were killed from the impact of the fall. *See id.* Ex. D, at 3, ECF No. 142-2.

**B. Relevant Procedural Background**

        There were four cases pending in this court arising out of the August 31, 2006 workplace accident. The Pamplona Plaintiffs had commenced separate suits in the Superior Court of California in San Diego County and in the Superior Court of Guam, both of which were ultimately removed to this court. *See* Civil Case Nos. 09-00003, 09-00006. Similarly, the Hernandez Plaintiffs' suits in the Superior Court of California in San Diego County and in the Superior Court of Guam were removed to this court. *See* Civil Case Nos. 09-00007, 09-00008. Given that the four cases alleged nearly identical causes of action against identical defendants, the Magistrate Judge granted Defendants' motion to consolidate. *See* ECF No. 61.

---

[3] Decedent Hernandez was a qualified manlift operator, but Decedent Pamplona was not. *See* Travis Decl. Ex. C, ECF No. 142-2. At the time of the accident, Decedent Hernandez was wearing his safety harness, but had failed to properly secure it to the work platform. Decedent Pamplona was not wearing his safety harness. *See* Travis Decl. Ex. J, at 159, ECF No. 142-4.

| | |
|---|---|
| 1 | On November 26, 2012, Plaintiffs filed the Motion for Partial Summary Judgment on |

On November 26, 2012, Plaintiffs filed the Motion for Partial Summary Judgment on Defendants' Affirmative Defenses. *See* ECF No. 127. Therein, Plaintiffs move the court to strike the first, second, third, fifth, seventh, eighth, and ninth affirmative defenses from Defendants' Answer to the Second Amended Complaint. Defendants filed their Opposition on February 11, 2013. *See* ECF No. 139. Plaintiffs' Reply was filed on April 9, 2013. *See* ECF No. 146.

On March 19, 2013, Defendants filed the Motion for Summary Judgment. *See* ECF No. 142. Therein, Defendants move the court for summary judgment on all Plaintiffs' claims because there are no genuine issues of material fact. Plaintiffs' Opposition was filed on April 10, 2013. *See* ECF No. 147. Defendants filed their Reply on April 29, 2013. *See* ECF No. 152. That same day, Defendants filed the Motion to Strike the Declaration of Scott Tengan on the basis that the Plaintiffs did not disclose Mr. Tengan's identity or scope of knowledge until ten months after the close of discovery in violation of Federal Rule of Civil Procedure 26. *See* ECF No. 153.

## II. JURISDICTION AND VENUE

All of Plaintiffs' causes of action are within the court's diversity jurisdiction. *See* 28 U.S.C. § 1332.

Venue is proper in this judicial district, the District of Guam, because Defendants conduct business here, and because all of the events or omissions giving rise to Plaintiffs' claims occurred here. *See* 28 U.S.C. § 1391.

## III. APPLICABLE STANDARD

The court is sitting in diversity, so it applies Guam substantive law and federal procedural law. *See Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 426–28 (1996). Thus, federal standards determine whether the evidence is sufficient to raise a question for the trier of fact. *See Gasaway v. Nw. Mut. Life Ins. Co.*, 26 F.3d 957, 960 (9th Cir. 1994).

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). To demonstrate that a material fact cannot be genuinely disputed, the movant may:

    (A)    cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

    (B)    show[ ] that the materials cited do not establish the…presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FED. R. CIV. P. 56(c)(1).

A fact is material if it might affect the outcome of the suit under the governing substantive law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. Thus, the evidence presented in opposition to summary judgment must be "enough to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Servs. Co.*, 391 U.S. 253, 288–89 (1968)). "The mere existence of a scintilla of evidence…will be insufficient; there must be evidence on which the jury could reasonably find for [the opposing party]." *Liberty Lobby*, 477 U.S. at 252.

The opposing party's evidence must be sufficient to create a genuine issue of fact that is material to the outcome of the suit, *whether or not it has the burden of proof at trial*. *See McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1340 (9th Cir. 1987). Thus, "[w]hen the moving party has carried its burden…, its opponent must do more than simply show that there is some metaphysical doubt as to the material facts…Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

## IV. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### A. Strict/Products Liability

The Restatement (Third) of Torts: Products Liability provides that "[o]ne engaged in the business of selling or otherwise distributing products who sells or distributes a defective product is subject to liability for harm to persons or property caused by the defect." RESTATEMENT (THIRD) OF TORTS: PROD. LIAB. § 1 (1998) [hereinafter RESTATEMENT (THIRD)]. There are three categories of product defect: (1) manufacturing defect, (2) design defect, and (3) inadequate instructions or warnings. *Id*. § 2.

Defendants argue that they are entitled to summary judgment on Plaintiffs' claims in strict/products liability because: (1) seller liability for defective products does not extend to Pine Rental as a commercial lessor, and (2) even if the court were to extend seller liability to Pine Rental, "there is simply no proof that the manlift was defective." Defs.' Mem. at 19, ECF No. 142-1.

#### 1. Liability for Commercial Lessor

The Restatement (Third) provides that "[o]ne otherwise distributes a product when, in a commercial transaction other than a sale, one provides the product to another either for use or consumption….Commercial nonsale product distributors include…lessors…" RESTATEMENT (THIRD) § 20(b). Accordingly, Pine Rental, as a commercial lessor, is subject to liability for defective products.

#### 2. Manufacturing Defect

##### a. Direct Evidence of Defect

"A product is defective when, *at the time of sale or distribution*, it contains a manufacturing defect," which occurs "when the product departs from its intended design even though all possible care was exercised in the preparation and marketing of the product."

- 6 -

RESTATEMENT (THIRD) § 2 (emphasis added). Even when the defect arises after manufacture, it is referred to a manufacturing defect since the product, as distributed to the consumer, has a defect that departs from its intended design. *See id.* cmt. c.

Defendants argue they are entitled to summary judgment because Plaintiffs have failed "to submit any evidence that the manlift was defective[.]" Defs.' Mem. at 19, ECF No. 142-1. Plaintiffs contend that there are genuine issues of fact because the record shows evidence of the following defects in the manlift: (1) the boom was extended even though the riser was less than fully elevated due to the fly extension interlock switch not functioning properly at the time of the accident; (2) the alarm system failed to go off when the manlift went into an unstable position; and (3) the manlift was inherently unstable.[4] *See* Pls.' Opp'n at 11–12, ECF No. 147. However, the relevant inquiry is whether a defect existed *at the time of distribution*, and the manufacturing defects articulated by Plaintiffs existed at the time of the accident.

Plaintiffs cannot point to any direct evidence that the manlift was defective at the time it was distributed to the *San Jose* or otherwise directly refute evidence that establishes it was not defective at that time. Defendant Guerrero testified that he inspected the manlift for two to three hours prior to delivering it to the *San Jose*, and once he arrived at the pier, he went through the rental inspection report with the *San Jose* operators and confirmed that all criteria, including all functions and controls, the boom assembly, and the presence of manuals and safety decals, were satisfied. *See* Travis Decl. Ex. B, at 33–39, ECF No. 142-2; *id*. Ex. M, ECF No. 142-5.

### b. Malfunction Theory: Circumstantial Evidence of Defect

Defendants argue that in the absence of direct evidence of a defect in the manlift at the time of delivery, Plaintiffs cannot proceed with their products liability claim. *See* Defs.' Mem. at 19, ECF No. 142-1. However, Plaintiffs contend that absence of direct proof of a defect does not

---

[4] As noted by Defendants, this last alleged defect is not due to manufacturing or maintenance, but rather design. *See* Defs.' Reply at 10, ECF No. 152. Design defect will be addressed in section IV(A)(4), *infra*.

preclude a finding that there are genuine issues of material fact, which can be shown by circumstantial evidence. *See* Pls.' Opp'n at 9–11, ECF No. 147.

The Restatement (Third) provides:

> It may be inferred that the harm sustained by the plaintiff was caused by a product defect existing at the time of sale or distribution, *without proof of a specific defect*, when the incident that harmed the plaintiff:
> (a) was of a kind that ordinarily occurs as a result of product defect; and
> (b) was not, in the particular case, solely the result of causes other than product defect existing at the time of sale or distribution.

RESTATEMENT (THIRD) § 3 (emphasis added). Some courts refer to this rule as the "malfunction theory" or "malfunction doctrine." *See id*. cmt. a.

Defendants assert that as Guam has not adopted the malfunction theory, Plaintiffs cannot rely on it. *See* Defs.' Reply at 5, ECF No. 152.

### i. Recognition in Guam Law

"When a decision turns on applicable state law and the state's highest court has not adjudicated the issue, a federal court must make a *reasonable determination* of the result the highest state court would reach if it were deciding the case." *Medical Lab. Mgmt. Consultants v. American Broadcasting Companies, Inc.,* 306 F.3d 806, 812 (9th Cir. 2002) (emphasis added). *See also Kona Enters., Inc. v. Estate of Bishop,* 229 F.3d 877, 885 n.7 (9th Cir. 2000) (same); *Aetna Cas. & Sur. Co. v. Sheft,* 989 F.2d 1105, 1108 (9th Cir. 1993) (same). To make such a "reasonable determination," the federal court looks to "intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance." *McCoy v. Chase Manhattan Bank, USA,* 559 F.3d 963, 970 (9th Cir .2009). *See also Arizona Elec. Power Co-op., Inc. v. Berkeley,* 59 F.3d 988, 991 (9th Cir. 1995); *In re Kirkland,* 915 F.2d 1236, 1239 (9th Cir. 1990) (same). As there are no intermediate appellate courts in Guam, the court will look only to decisions from other jurisdictions, statutes, treatises, and restatements, giving special weight to decisions from other jurisdictions. *See Vigortone AG*

*Products, Inc. v. PM AG Products, Inc.,* 316 F.3d 641, 644 (7th Cir. 2002) (Posner, J.) ("When state law on a question is unclear ..., the best guess is that the state's highest court, should it ever be presented with the issues, will line up with the majority of the states.").

The malfunction theory, set forth in Restatement (Third) § 3, can be traced back to the law of negligence and the *res ipsa loquitur* doctrine. *See* RESTATEMENT (THIRD) § 3 cmt. a. Essentially, the malfunction theory is the *res ipsa loquitur* doctrine applied in the products liability context.

The Ninth Circuit addressed the issue of *res ipsa loquitur* and products liability in *Jenkins v. Whittaker Corp.*, 785 F.2d 720 (9th Cir. 1986). In *Jenkins*, the plaintiff argued that *res ipsa loquitur* is inapplicable to strict/products liability and relied on California cases to support his argument. *Id.* at 731–32. Under California law, *res ipsa loquitur* raises a rebuttable presumption against the defendant, which is inappropriate in imposing strict liability. *Id.* at 732. The Ninth Circuit found the plaintiff's reliance on California cases to be unavailing because under Hawaii law, *res ipsa loquitur* does not raise such a presumption, and thus, "nothing bars application of the *res ipsa loquitur* theory to strict liability." *Id.* at 733 (citing *Stewart v. Ford Motor Co.*, 553 F.2d 130, 138 (D.C. Cir. 1977)).

The Supreme Court of Guam's iteration of the *res ipsa loquitur* doctrine comes directly from the Restatement (Second) of Torts. *See Rahmani v. Park*, 2011 Guam 7 ¶ 37.[5] There has been no Guam case in which *res ipsa loquitur* has created a presumption of negligence against the defendant similar to California law. Rather, the Restatement (Second) states that "creating a presumption against the [defendant] or imposing upon it the burden of proof…go[es] beyond the rule stated…and represent[s] in effect a special rule." RESTATEMENT (SECOND) OF TORTS § 328D cmt. h [hereinafter RESTATEMENT (SECOND)]. Thus, following the Ninth Circuit's reasoning in

---

[5] *See* section IV(B)(1), *infra*, for further discussion of *res ipsa loquitur*.

- 9 -

*Jenkins*, Defendants' reliance on California cases to establish that *res ipsa loquitur* does not apply in the strict/products liability context is inapposite. Moreover, the Ninth Circuit recognized that "[i]n most jurisdictions, purely circumstantial evidence of a defect will suffice to take the case to the jury provided that the plaintiffs have introduced evidence": (1) tending to negate causes for an accident other than a defect in the product, and (2) suggesting whatever defect might have existed was one introduced into the product by the defendant. *Jenkins*, 785 F.2d at 732 (citing *Stewart*, 553 F.2d at 137).

The Restatement (Third) and a majority of jurisdictions recognize the malfunction theory in some form and allow cases to go to the jury based upon purely circumstantial evidence of a product defect, so long as certain elements are satisfied. Accordingly, the court finds no compelling reason barring recognition of the malfunction theory.

### ii. Applicability

#### a) Restatement (Third)

Pursuant to the Restatement (Third), without proof of a specific defect, an inference that the harm sustained by Plaintiffs was caused by a product defect existing at the time of distribution can only be made if the incident was of a kind that ordinarily occurs as a result of product defect. *See* RESTATEMENT (THIRD) § 3. Plaintiffs argue that "the intended use of the lift was to enable the decedents to clean the side of the vessel and the lift did not perform as expected—it flipped over killing the users….Common experience tells us that flip overs would not occur in the absence of a defect." Pls.' Opp'n at 10–11, ECF No 147.

The Restatement (Third) expounds that claims under § 3 "are limited to situations in which a product fails to perform its *manifestly intended function*, thus supporting the conclusion that a defect of some kind is the most probable explanation." *Id*. cmt. b (emphasis added). Although here the parties were aware that the manlift was to be used for maintenance work on a

ship, that is not the manifestly intended function of a manlift generally. Rather, the manifestly intended function of a manlift is to provide persons with temporary access to otherwise inaccessible areas, usually at height. Therefore, Plaintiffs' argument that the manlift was not reasonably safe for its known intended use of cleaning the side of the vessel is more appropriate for the negligence analysis, which will be addressed below.

With respect to the malfunction theory, the pertinent question is whether manlift tip-overs ordinarily occur as a result of product defect. Defendants' expert Bradley D. Closson testified that manlift tip-overs are "common" and "a known hazard with aerial devices, which is why we have fall protection required." Travis Decl. Ex. E, at 34:5–10, ECF No. 142-2. Closson explained that tip-overs occur "from people driving into potholes, going across what they think is a piece of wood and turns out it's a piece of plywood over a hole and it goes out of level." *Id*. at 33:14–16. These illustrations relate to the evenness of the ground on which the manlift is being operated rather than some product defect. Plaintiffs' expert John Roberts did not testify regarding why manlift tip-overs generally occur. As Plaintiffs have not rebutted the evidence of Defendants' expert or otherwise established that manlift tip-overs ordinarily occur as a result of product defect, the malfunction theory, as set forth in the Restatement (Third), is not applicable.

### b) Other Jurisdictions

"In most jurisdictions, purely circumstantial evidence of a defect will suffice to take the case to the jury provided that the plaintiffs have introduced evidence": (1) tending to negate causes for an accident other than a defect in the product, and (2) suggesting whatever defect might have existed was one introduced into the product by the defendant. *Jenkins*, 785 F.2d at 732 (citing *Stewart*, 553 F.2d at 137). As this formulation is slightly different from that set forth in the Restatement (Third), the court will also address whether these elements have been sufficiently established.

Here, Plaintiffs have not introduced evidence tending to negate causes for the accident other than a defect in the manlift. There are multiple theories as to what caused the manlift to tip over: (1) some product defect; (2) malfunction of the fly extension interlock switch, which allowed the manlift to get into a dangerous configuration; (3) the work platform being caught by the ship's structure, pulled, and then released, which imparted dynamic forces; or (4) a combination or some or all these events. Plaintiffs acknowledge that "[t]here is a dispute of fact as to whether there was a collision between the basket (work platform) of the lift and the side of the ship." Pls.' Opp'n at 5. Further, Plaintiffs' expert opined that one possible cause for the manlift tip-over was the operators' incorrect positioning of the boom in relation to the vessel. *See* Travis Decl. Ex. N, at 118, 122–24, ECF No. 142-5. This demonstrates that the evidence does not tend to negate causes other than a product defect. Therefore, the malfunction theory, as set forth in *Jenkins*, is not applicable.

### c. Conclusion

Defendants assert that Plaintiffs have not submitted direct evidence of a defect in the manlift. Plaintiffs are relying on purely circumstantial evidence to demonstrate that there is a genuine issue as to whether there was a defect in the manlift. However, inference that Plaintiffs' harm was caused by a product defect existing at time of distribution without proof of a specific defect requires Plaintiffs to establish either: (1) the incident was of a kind that ordinarily occurs as a result of product defect and was not solely the result of causes other than the product defect, or (2) evidence tending to negate causes for the accident other than a product defect and suggesting whatever defect might have existed was one introduced into the product by Defendants.

Plaintiffs do not provide evidence to rebut Defendants' expert testimony that tip-overs ordinarily occur as a result of being operated over uneven surfaces rather than product defect. In

addition, the record does not tend to negate causes for the accident other than product defect. Therefore, the malfunction theory is not applicable, and Plaintiffs cannot rely on purely circumstantial evidence of a product defect to enable the case to proceed to the jury. Accordingly, summary judgment in favor of Defendants is **GRANTED** with respect to the strict/products liability claim based on manufacturing defect.

### 3. Failure to Warn

Plaintiffs also argue that they have provided sufficient evidence to present a products liability claim to the jury based on the Defendants' failure to warn the Decedents of the inherent dangers of the manlift. *See* Pls.' Opp'n at 12, ECF No. 147. Defendants contend that Plaintiffs failed to plead a claim for relief in strict liability failure to warn and thus, failed to provide Defendants fair notice of the claims against them. As such, Defendants argue that they are entitled to summary judgment on Plaintiffs' strict liability claim to the extent it is based on failure to warn. *See* Defs.' Reply at 7, ECF No. 152.

The Ninth Circuit has held that "a plaintiff cannot raise a new theory for the first time in opposition to summary judgment." *Patel v. City of Long Beach*, 489 F. App'x 159, 161 (9th Cir. 2012) (citing *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292–93 (9th Cir. 2000) and *Wasco Products, Inc. v. Southwall Tech., Inc.*¸ 435 F.3d 989 (9th Cir. 2006)). "A complaint guides the parties' discovery, putting the defendant on notice of the evidence it needs to adduce in order to defend against the plaintiff's allegations." *Coleman*, 232 F.3d at 1292.

Here, Plaintiffs are now advancing a theory of strict/products liability based on failure to warn. A product "is defective because of inadequate instructions or warnings when the foreseeable risks of harm posed by the product could have been reduced or avoided by the provision of reasonable instructions or warnings by the…distributor…and the omission of the instructions or warnings renders the product not reasonably safe." RESTATEMENT (THIRD) § 2.

Allowing Plaintiffs to proceed on the failure to warn theory would prejudice Defendants because they were not put on notice that they would need to adduce evidence to defend against a claim that the existing warnings were inadequate and rendered the manlift not reasonably safe. Therefore, Plaintiffs cannot raise this new theory of failure to warn during summary judgment.

### 4. Design Defect

Defendants contend that Plaintiffs are also advancing a design defect theory of liability based on language in the Opposition, which states that "a jury could find that the lift was defective because of its inherent instability." Pls.' Opp'n at 11. Although it is not clear whether Plaintiffs are, in fact, advancing a theory of strict/products liability based on a design defect, Plaintiffs cannot raise this new theory during summary judgment as it would be prejudicial to Defendants.

### B. Negligence

Under Guam law, in order to recover for negligence a plaintiff must establish: (1) the existence of a duty; (2) breach of such duty; (3) causation; and (4) damages. *Guerrero v. McDonald's Int'l Prop. Co., Ltd.*, 2006 Guam 2 ¶ 9 (citing *Leon Guerrero v. DLB Constr. Co.*, 1999 Guam 9 ¶ 14).

The Hernandez Plaintiffs allege that Defendants "[1] negligently failed to inspect, maintain and repair the Manlift, [2] negligently failed to repair it after complaints, and [3] negligently represented to the officers and crew of the San Jose that the Manlift was in good working order." Hernandez Compl. ¶ 17, ECF No. 36-1. In their Second Amended Complaint ("SAC"), the Pamplona Plaintiffs allege that Defendants' negligence consisted of the following:

[1] Renting a Manlift that they knew, or should have known, was in a state of disrepair and unsafe for the intended task;
[2] Failing to properly inspect the Manlift so as to discover its unsafe condition;
[3] Failing to properly repair or replace the Manlift after being informed of its defective and unsafe condition;

| | | |
|---|---|---|
| 1 | [4] | Failure to warn the renting parties or the Decedent of the dangers inherent in operating such a Manlift; |
| 2 | [5] | Failing to determine whether the operators or users of the lift would be properly trained; |
| 3 | [6] | Failing to provide training to the intended users of the Manlift that was necessary for said users to be able to operate the Manlift safely; |
| 4 | [7] | Failing to ensure that all safety and precautionary features and controls of the Manlift were functioning properly; [and] |
| 5 | [8] | Failure to ensure that the Manlift had necessary safety devices[.] |

Pamplona SAC ¶ 30, ECF No. 65.

### 1. *Res Ipsa Loquitur*

#### a. Doctrine

The Supreme Court of Guam has held:

(1) It may be inferred that harm suffered by the plaintiff is caused by negligence of the defendant when
    (a) the event is of a kind which ordinarily does not occur in the absence of negligence;
    (b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and
    (c) the indicated negligence is within the scope of the defendant's duty to the plaintiff.

*Rahmani v. Park*, 2011 Guam 7 ¶ 37 (quoting RESTATEMENT (SECOND) § 328D(1)).

#### b. Applicability

In order for *res ipsa loquitur* to apply, "the plaintiff must sufficiently eliminate his conduct or that of a third party as a responsible cause for the injury." *Id.* at ¶ 38 (citing RESTATEMENT (SECOND) § 328D cmts. f, i ("[I]n any case where there is no doubt that it is at least equally probable that the negligence was that of [the plaintiff or] a third person, … the plaintiff has not proved his case.")). Defendants argue that the conduct of Decedents and other third parties are not sufficiently eliminated and thus, the doctrine is inapplicable.

As discussed above, there are multiple theories as to what caused the manlift to tip over: (1) some product defect; (2) malfunction of the fly extension interlock switch, which allowed the manlift to get into a dangerous configuration; (3) the work platform being caught by the ship's

- 15 -

structure, pulled, and then released, which imparted dynamic forces; or (4) a combination of some or all these events. Plaintiffs acknowledge a factual dispute as to whether there was a collision between the work platform and the side of the ship, which establishes that the evidence does not sufficiently eliminate other potential causes that are not attributable to Defendants. Accordingly, as the second element has not been satisfied, *res ipsa loquitur* is not applicable in this case and thus, summary judgment in favor of Defendant is **GRANTED** with respect to the *res ipsa loquitur* claim.

### 2. Scope of Duty

As the *res ipsa loquitur* doctrine is not applicable, Defendants' negligence cannot be inferred. Therefore, the court must undertake the traditional negligence analysis and determine whether there is any genuine issue of material fact.

Defendants acknowledge that they owed certain duties to lessees as the owner of the manlift. *See* Defs.' Mem. at 7, ECF No. 142-1. However, they contend they did not have a legal duty to: (1) determine whether the operators or users of the lift would be properly trained; (2) provide training to the intended users of the manlift so that they were able to operate the manlift safely; and (3) ensure that the manlift had necessary safety devices, to the extent that necessary safety devices include fall protection gear. *Id.* at 7–8.

The scope of Defendants' duty to Decedents is "defined by the extent of their relationship. Tort analysis requires the court to first establish the relationship of the parties, and their mutual expectations, thereby deriving the scope of the duty before it can be considered whether any duties of care were breached." *Rookard v. Mexicoach*, 680 F.2d 1257, 1260–61 (9th Cir. 1982).

Under Guam law, "one is responsible, not only for the result of his willful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of his

property or person, except so far as the latter has willfully brought the injury upon himself." 18 GUAM CODE ANN. § 90107 (2012). With respect to lease of chattel for immediate use, the Restatement (Second) provides:

> One who leases a chattel as safe for immediate use is subject to liability to those whom he should expect to use the chattel, or to be endangered by its probable use, for physical harm caused by its use in a manner for which, and by a person for whose use, it is leased, if the lessor fails to exercise reasonable care to make it safe for such use or to disclose its actual condition to those who may be expected to use it.

RESTATEMENT (SECOND) § 408.

Defendants were required to exercise reasonable care to make the manlift safe for use known to be intended (i.e., to perform maintenance work on the side of the ship) and to disclose the manlift's actual condition. These obligations do not include determining whether the users would be properly trained, training users to properly operate the manlift, or ensuring that the users would have fall protection gear. Plaintiffs do not provide any legal authority to support their contention that Defendants owed such duties. Accordingly, the court finds that Defendants did not owe a duty to: (1) determine whether the users would be properly trained; (2) train users to properly operate the manlift; or (3) ensure that the users would be provided fall protection gear.

### 3. Breach of Duty

Defendant Guerrero and Defendants' expert confirmed in their depositions that the boom could not have been extended with the riser less than fully elevated unless the manlift was not functioning properly. Moroni Decl. Ex. A, at 154, ECF No. 148-1; Travis Decl. Ex. E, at 21, ECF No. 142-2. The pertinent question, however, is whether Defendants failed to discharge their duty to exercise reasonable care to make the manlift safe for use known to be intended and to disclose the manlift's actual condition to the *San Jose*.

Defendants argue that there is substantial evidence that the malfunction which occurred at the time of the accident was merely transient in nature and not due to an existing product defect. *See* Defs.' Reply at 2, ECF No. 152. For example, Defendant Guerrero inspected the manlift for two to three hours prior to delivering it to the *San Jose*, and once he arrived at the pier, he went through the rental inspection report with the *San Jose* operators and confirmed that all criteria, including all functions and controls, the boom assembly, and the presence of manuals and safety decals, were satisfied. *See* Travis Decl. Ex. B, at 33–39, ECF No. 142-2; *id*. Ex. N, ECF No. 142-5. After the accident, the manufacturer JLG, the Navy, and the Occupational Safety and Health Administration ("OSHA") all inspected the manlift and found it to be in good working order. *See* Travis Decl. Ex. L, at 91–93, 99–100, ECF No. 142-5.

The record supports Defendants' contention that the malfunction was an anomalous, one-time occurrence which was independent of Defendants' actions. Plaintiffs claim that Defendants failed to inspect, maintain, and repair the manlift, but they have provided no evidence to support their allegations or to dispute Defendants' evidence to the contrary. Plaintiffs have not proffered evidence to rebut the Pine Rental Inspection Report or Defendant Guerrero's testimony that the manlift was in good working order at the time it was delivered to the *San Jose*. Although the record indicates that there was a leak in the steer or drive hose after the manlift was delivered to the *San Jose* and subsequently loaned out by the *San Jose* to a third party, there is no evidence that Defendant Guerrero repaired the leak negligently. In fact, the post-accident inspections by JLG, the Navy, and OSHA revealed that there were no defects in the manlift—"[e]verything passed…[they] could not find a broken hose, a broken rod, a broken switch." Travis Decl. Ex. L, at 93:15–17, ECF No. 142-5. Plaintiffs have not proffered evidence contradicting the findings of the post-accident inspections.

Whether Defendants breached their duty to exercise reasonable care to make the manlift safe for use or to disclose the manlift's actual condition or known defects is a material fact because it will affect the outcome of the suit as it is a necessary element of the negligence claim. The dispute between the parties is not genuine as Plaintiffs have failed to proffer evidence which demonstrates that Defendants failed to exercise reasonable care to make the manlift safe or to disclose any defects of which Defendants knew or should have known. Therefore, because there is no genuine issue regarding breach of a duty, summary judgment in favor of Defendants is **GRANTED** with respect to the negligence claim.

### V. CONCLUSION

Based upon the foregoing, the court **GRANTS** Defendants' Motion for Summary Judgment in all respects. Accordingly, Plaintiffs' Motion for Partial Summary Judgment and Defendants' Motion to Strike are hereby **MOOT**.

**SO ORDERED.**



**/s/ Frances M. Tydingco-Gatewood**
   **Chief Judge**
**Dated: Mar 31, 2014**